UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

AMANDA W.,
    Plaintiff,

v.                                    Civil No. 3:24CV441(AWT)

LELAND DUBEK, ACTING COMMISSIONER
OF SOCIAL SECURITY[1],
    Defendant.

## RULING AFFIRMING THE COMMISSIONER'S DECISION

Plaintiff Amanda W. appeals the Commissioner's decision dated February 12, 2001 (the "Decision") denying her application for disability insurance benefits ("DIB") pursuant 42 U.S.C. §§ 405(g) and 1383(c)(3).

The plaintiff filed a motion to reverse the Decision of the Commissioner, or in the alternative for remand for a hearing. The plaintiff contends that the "Decision is not supported by substantial evidence" and that "errors committed by Defendant's Administrative Law Judge prevented the Plaintiff from receiving a full and fair hearing." Pl.'s Mot. (ECF No. 14) at 1. The Commissioner filed a motion for an order affirming the Commissioner's Decision and maintains that "the Commissioner's findings are supported by substantial evidence

---

[1] Leland Dubek became the Acting Commissioner of Social Security in February 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Leland Dubek should be substituted for Martin O'Malley as the defendant in this suit. See § 205(g) of the Social Security Act, 42 U.S.C. § 405(g)("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

and made by a correct application of legal principles."  Def.'s Mot. (ECF No. 15) at 1.

For the reasons set forth below, the court concludes that the Administrative Law Judge ("ALJ") applied the correct legal principles and that the ALJ's findings are supported by substantial evidence.  Therefore, the Commissioner's Decision is being affirmed.

### I.  LEGAL STANDARD

"A district court reviewing a final [] decision . . . [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C § 405(g), is performing an appellate function."  Zambrana v. Califano, 651 F.2d 842, 844 (2d Cir. 1981).  The court may not make a de novo determination of whether a plaintiff is disabled in reviewing a denial of disability benefits.  See Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching a conclusion and whether the decision is supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987).  Substantial evidence "is more than a mere scintilla.  It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Biestek v. Berryhill, 587

U.S. 97, 103 (2019) (internal citations and quotation marks omitted).

Absent legal error, the court may not set aside the decision of the Commissioner if it is supported by substantial evidence.  See Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Thus, if the Commissioner's decision is supported by substantial evidence, that decision will be affirmed, even where there may also be substantial evidence to support the plaintiff's contrary position.  See Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).

## II.  DISCUSSION

The plaintiff contends that the court should reverse the Commissioner's Decision because "she has been disabled within the meaning of the Social Security Act since December 24, 2014, and remained disabled for at least a 12-month period thereafter".  Pl.'s Mem. (ECF No. 14-1) at 2.  She contends in the alternative that the court should remand "for a new Hearing and a new Decision to rectify the [ALJ's] errors, . . . . Specifically, the [] ALJ:  1) made numerous misstatements of the record; 2) weighed medical opinions outside of regulations; 3) had no basis for her RFC description; and 4) composed an

incomplete Residual Functional Capacity (RFC) description at
Step Four." Id.

The defendant maintains that "Plaintiff's multiple
challenges to the ALJ's" "RFC findings . . . are unsupported."
Def.'s Mem. (ECF No. 15-1) at 5, 13. The defendant argues that
the Commissioner's finding that the plaintiff "was not disabled
from December 24, 2014, the alleged onset date, through December
31, 2015, the date that she was last insured" (Id. at 1) "is
supported by substantial evidence" (Id. at 5):

> The Administrative Law Judge (ALJ) provided a detailed
> discussion of the evidence and reasonably determined that,
> despite her impairments, Plaintiff retained the residual
> functional capacity (RFC) to perform light work, with
> additional mental limitations. The ALJ based these findings
> on the treatment records, which revealed that Plaintiff's
> multiple sclerosis (MS) was stable, she had limited and
> conservative treatment for her MS, anxiety, and depression;
> and her physical and mental status examination findings
> were largely normal. The ALJ further observed that, despite
> her impairments, Plaintiff retained the ability to perform
> routine activities of daily living, including performing
> childcare and household chores. In addition, the ALJ based
> the RFC finding on the assessments of several State agency
> consultants, that were, in turn, consistent with
> Plaintiff's examination findings and her daily activities.
> . . . . Because Plaintiff cannot meet her burden of showing
> that "no reasonable factfinder" could have drawn the same
> conclusions as the ALJ did based on the evidence of record,
> this Court should affirm the ALJ's decision.

Id. at 1-2. See also id. at 5 and 13.

The ALJ's determination of the plaintiff's residual
functional capacity ("RFC") was as follows:

> [T]hrough the date last insured, the claimant had the
> residual functional capacity to perform light work as

defined in 20 CFR 404.1567(b) except that she could perform simple, routine tasks involving no more than simple, short instructions and simple work-related decisions with few workplace changes. She required a non-public work setting, but could tolerate occasional interactions with coworkers and supervisors.

R. 753.  Under the regulations:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

### A.  Medical Opinions

As to the plaintiff's second point, she fails to show that the ALJ improperly evaluated the opinions of Drs. Sharon Press and Eileen Kelly or unduly relied on the opinions of the state agency reviewers.  The plaintiff contends:

Despite having evidence from Ms. W[.]'s own providers from the pre-and shortly-post-DLI period, the ALJ substituted her judgment for that of these treating medical specialists, and weighed the medical opinions of record in a manner that is inconsistent with the requirements of the regulations. . . . . [T]he ALJ's weighing of medical opinions does not seem to take the requirements of the regulations into account at all.

Pl.'s Mem. (ECF No. 14-1) at 34-35.

Section 404.1520c of the regulations addresses how an ALJ considers, and articulates the ALJ's consideration of, medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017[2]:

(a) How we consider medical opinions and prior administrative medical findings. We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources. When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section). We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

(b) How we articulate our consideration of medical opinions and prior administrative medical findings. We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record. Our articulation requirements are as follows:

(1) Source-level articulation. . . . [W]hen a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or

---

[2] Because the plaintiff's claims were filed in July of 2017 (See R. 111, 197-98), Section 404.1520c applies to this case.

prior administrative medical finding from one medical source individually.

(2) Most important factors. The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. . . . We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate . . . .

(3) Equally persuasive medical opinions or prior administrative medical findings about the same issue. When we find that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same, we will articulate how we considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section for those medical opinions or prior administrative medical findings in your determination or decision.

(c) Factors. We will consider the following factors when we consider the medical opinion(s) and prior administrative medical finding(s) in your case:

(1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

(3) Relationship with the claimant. This factor combines consideration of the issues in paragraphs (c)(3)(i)-(v) of this section.

7

(i) Length of the treatment relationship. The length of time a medical source has treated you may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).

(ii) Frequency of examinations. The frequency of your visits with the medical source may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).

(iii) Purpose of the treatment relationship. The purpose for treatment you received from the medical source may help demonstrate the level of knowledge the medical source has of your impairment(s).

(iv) Extent of the treatment relationship. The kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories may help demonstrate the level of knowledge the medical source has of your impairment(s).

(v) Examining relationship. A medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder.

(4) Specialization. The medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.

(5) Other factors. We will consider other factors that tend to support or contradict a medical opinion or prior administrative medical finding. This includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements. When we consider a medical source's familiarity with the other evidence in a claim, we will also consider whether new evidence we receive after the medical source made his

or her medical opinion or prior administrative medical
finding makes the medical opinion or prior
administrative medical finding more or less
persuasive.

(d) Evidence from nonmedical sources. We are not required
to articulate how we considered evidence from nonmedical
sources using the requirements in paragraphs (a)-(c) in
this section.

20 C.F.R. § 404.1520c (effective March 27, 2017).

### 1.    Treating Sources

#### a. Psychologist Sharon H. Press, Ph.D.

As to Dr. Press, the plaintiff contends:

First, Dr. Press is entitled to make a retrospective
opinion, which should not be discounted merely because it
is retrospective. . . . . Second, the opinion of Dr. Press
is supported by the March 5, 2016, opinion of Eileen Kelly,
LMFT. . . . . Dr. Press's opinion is consistent with the
opinions issued by Ms. Kelly, and with the record as a
whole, including Ms. W[.]'s testimony at two hearings. It
is also supported by the March 2015, note by Dr. Story
which indicated that due to neurological symptoms and
disability, she was unable to perform her occupation (Tr.
759).

Pl.'s Mem. (ECF No. 14-1) at 35-37. See Dr. Press's opinions at

R. 709-10, 1196-97.

The defendant contends that "Dr. Press's July 2018 and

December 2020 statements that Plaintiff was unable to work were

not medical opinions", "did not offer information about

Plaintiff's conditions during the relevant period", "never

stated that Plaintiff's 'limitations' existed prior to the DLI",

and "other evidence [] was at odds with her opinion, such as

Plaintiff's treatment notes[,] daily activities[,] and the

assessments of Dr. Stack and Dr. Sutton, who did consider the relevant period prior to the DLI". Def.'s Mem. (ECF No. 15-1) at 11-12. The court agrees.

The Decision states:

In February 2016, July 2018 and December 2020, Ms. Kelly and Sharon Press, Ph.D., indicated that the claimant was unable to work (Exs. B5F/2; B17F; B22F).

The undersigned notes that Dr. Press only started treating the claimant in January 2018, over two years after the date last insured. As such, the findings of Dr. Press provide little insight into the claimant's functioning during the relevant period at issue in this matter. The undersigned also notes that the Social Security Administration has determined that some evidence is inherently neither valuable nor persuasive. Such evidence includes decisions by other governmental agencies and nongovernmental entities, state agency disability examiner findings, and statements on issues reserved to the Commissioner. Statements indicating that the claimant is "permanently disabled" or "unable to work," are not medical opinions, but rather administrative findings, dispositive of a case. Because this evidence is inherently neither valuable nor persuasive to the issue of whether a claimant is disabled, the undersigned need not provide any analysis about how such evidence was considered (20 CFR 404.1520b(c)). Likewise, the undersigned need not articulate how she considered evidence from nonmedical sources such as family members (20 CFR 404.1520c(d)). Thus, although the undersigned notes that such evidence may be present in the record, the undersigned has not addressed it in this decision.

R. 759.

Here, Dr. Press's letters were dated July 30, 2018 and December 21, 2020 and make clear that treatment began January 21, 2018, over two years after the date last insured. The letters do not clearly refer to the relevant period. See Vitale

v. Apfel, 49 F.Supp.2d 137, 142 (E.D.N.Y. 1999) ("While the existence of a pre-existing disability can be proven by a retrospective opinion, such an opinion must refer clearly to the relevant period of disability and not simply express an opinion as to the claimant's current status.").  Also, statements that the plaintiff is disabled or unable to work are issues "reserved to the Commissioner" and do not require "any analysis about how [the ALJ] considered such evidence", even when that evidence is considered a medical opinion.  20 C.F.R. § 404.1520b(c), (c)(3)(i).  Moreover, as noted elsewhere in this ruling, the ALJ identified and placed weight on inconsistent evidence, i.e., treatment notes, daily activities and the assessments of Drs. Stack and Sutton.  See Reynolds v. Colvin, 570 F. App'x 45 (2d Cir. June 20, 2014) (substantial evidence supported the ALJ's decision to give little weight to the 2011 retrospective opinions of two treating physicians where "1) neither doctor treated claimant until 2010, and 2) record medical evidence contradicted or failed to support their retrospective opinions").

### b. Eileen Kelly, Licensed Marriage and Family Therapist

As to Eileen Kelly, the plaintiff contends that "it was error for the ALJ to weigh a treating source opinion against a hastily-made social history, from a one-time visit, at the very

beginning of the relevant period."  Pl.'s Mem. (ECF No. 14-1) at 36.

The defendant contends that "the ALJ appropriately evaluated Ms. Kelly's opinion and reasonably found that it was minimally persuasive" because it "relied on [] subjective reports"; "Plaintiff inconsistently reported to her providers that she had no problems dressing, bathing, concentrating, remembering, making decisions and doing errands independently (Tr. 759; see Tr. 350, 353)"; and "Ms. Kelly's opinion was inconsistent with the treatment notes of providers (who [unlike Ms. Kelly]) did submit their progress notes), which documented that Plaintiff had generally-intact mental status examination findings and no need for higher levels of mental health care . . . (see Tr. 308, 315, 322, 328-29, 339-340, 360, 585)."  Def.'s Mem. (ECF No. 15-1) at 10-11.  The court agrees.

The Decision states:

In February 2016, Ms. Kelly indicated that she saw the claimant once [a] week since June 2015 to address her anxiety disorder. Ms. Kelly noted that the claimant had multiple stressors including health issues, financial distress, child's Autism and familial relational issues. Ms. Kelly reported that the claimant was often distracted with memory and attention issues (Ex. B5F).

The claimant's allegations are not fully corroborated by the overall evidence of record. The claimant reported disabling MS pain, fatigue and brain fog. Yet, the record documents that the claimant's MS was stable (Ex. B13F/20, 22-23). She had better pain control and improved energy levels on her prescription medication regimen (Exs. B3F/22; B13F/16-17, 22-23). While she reported diffuse pain at

examinations, she presented in no acute distress at those
same examinations (Exs. BlF/17-21, 24-27, 29-32; B3F/2,
10). She also reported no difficulties concentrating,
remembering, making decisions, dressing, bathing, doing
errands on her own, walking, or climbing stairs at
examinations (Ex. B2F/3, 6). The claimant had relatively
benign examination findings, negative wrist x-rays and mild
spinal MRI findings (Exs. B3F; B4F; B13F; Bl4F/2). . . .[3]

The claimant's improved fatigue and pain symptoms with
medication management, the relatively benign examination
findings of record and her ability to perform her
activities of daily living and care for her minor child
prior to the date last insured is inconsistent with a level
of severity that would have precluded her from sustaining
any work activity (Exs. BlE; BlF/10; B2F/3, 6; B3F/22;
B13F/16-17, 20, 22-23; Hearing Testimony). Based on the
overall evidence of record, the undersigned finds that the
record did not show evidence to support greater
restrictions than provided for in the decisional residual
functional capacity.

. . . .

In February 2016, Ms. Kelly opined that the claimant
frequently had problems interacting appropriately with
others, asking questions or requesting assistance, carrying
out multi-step instructions, focusing long enough to finish
simple activities or tasks, and performing basic activities
at a reasonable pace. The claimant sometimes had problems
taking care of personal hygiene, caring for physical needs,
using appropriate coping skills, handling frustration
appropriately, respecting/responding appropriately to
others in authority, getting along with others without
distracting them or exhibiting behavioral extremes,
carrying out single-step instructions, changing from one
simple task to another, and persisting in simple activities
without interruption from psychological symptoms. The

---

[3] The court has intentionally omitted and does not rely on the part of the
Decision that reads "In April 2015, the claimant was observed carrying her
baby in a carrier.  She reported no problems with walking while carrying her
baby (Ex. BlF/10)."  The plaintiff contends, "The notation about walking
while carrying a baby is also incorrect . . .", but other, substantial
evidence in the record makes it unnecessary to address this issue.

claimant had average abilities in using good judgment
regarding safety and dangerous circumstances (Ex. B5F).

Ms. Kelly's opinion is minimally persuasive. Ms. Kelly
cited to her treating relationship with the claimant in
support of her findings. She indicated that she saw the
claimant on a weekly basis from June 2015 to March 2016.
However, Ms. Kelly's findings appeared to be based
primarily on the claimant's self-reported difficulties
dressing, washing, doing household chores, interacting with
others, following instructions, finishing tasks and
focusing. Ms. Kelly's opinion is unsupported by treatment
notes documenting the claimant's normal/intact mental
status examination findings and her lack of a need for
higher levels of mental health care (Exs. B1F/17- 21, 24-
27, 29-32; B3F/2, 10, 56; B4F; B13F/16-l 7, 22-23).
Additionally, the claimant reported at examinations that
she had no problems dressing, bathing, concentrating,
remembering, making decisions and doing errands
independently (Ex. B2F/3, 6).

R. 756-59.

The ALJ was not required to give Dr. Kelly's opinion that

the plaintiff is unable to work any weight because this

determination is for the Commissioner to make.  See 20 C.F.R. §

404.1520b(c)(3)(i).  Also, even if the court assumes it was

error for the ALJ to consider the social history given on

12/29/14 and 11/17/15, it would be harmless because additional,

substantial evidence supports the ALJ's finding that the

plaintiff was not precluded from all work activity.  In

addition, Dr. Kelly's opinions often note "client reports",

which supports the defendant's argument that her opinions rely

on the plaintiff's subjective responses.  The regulations state:

The more relevant the objective medical evidence and
supporting explanations presented by a medical source are

14

to support his or her medical opinion(s) . . ., the more
persuasive the medical opinions . . . will be.

20 C.F.R. § 404.1520c(c)(1) (effective March 27, 2017).  See
also Roma v. Astrue, 468 F. App'x 16, 19 (2d Cir. 2012)
("supportability of [] opinion was doubtful as it was based
largely upon [] subjective responses [that] were not themselves
entirely credible for the reasons explained in the ALJ's
decision").  Dr. Kelly did not provide treatment notes that
could have supported her opinion, despite being asked to produce
them.  See R. 126 ("EILEEN KELLY LMFT -- no report received"
dated 8/15/17), 894 ("Called and left message for therapist
Eileen Kelly requesting copies of progress notes from 6/15 to
1/16" signed on 5/31/16), 606 ("2ND REQUEST" for records dated
8/12/17).  Moreover, as noted elsewhere in this ruling, her
opinions were inconsistent with other treatment notes
documenting the plaintiff's mental status and lack of need for
higher levels of mental health care.  They were also
inconsistent with the assessments of Drs. Stack and Sutton,
which the ALJ found persuasive.

>           **2.    State Agency Reviewers: Drs. Craig
>                   Billinghurst, Deborah Stack, and Robert
>                   Sutton[4]**

As to the state agency reviewers, the plaintiff contends that "these doctors have never met, examined, or treated Ms. W[.].  They did not have access to the full medical file. . . . [T]hese doctors are not rheumatology or neurology experts.  They are not even experts in any related area of practice. . . . [T]he opinion of a non-treating and non-examining doctor should not override the opinions of multiple treating sources."  Pl.'s Mem. (ECF No. 14-1) at 38.

The defendant contends that:

> while Plaintiff submitted additional evidence after Dr. Stack and Dr. Sutton reviewed the record, this additional evidence did not contradict the findings of the state agency consultants because it continued to show that Plaintiff had conservative mental health treatment and relatively benign examination findings (Tr. 759; see e.g., Tr. 1123, 1130, 1140, 1145, 1159). . . .  The Commissioner's regulations explain that State agency physicians are highly qualified experts in Social Security disability evaluation, and their prior administrat[ive] medical findings must be considered. 20 C.F.R. § 404.1513a(b)(1). Moreover, the Commissioner's revised regulations provide that supportability and consistency—and not the relationship between the medical source and the claimant—are the most important factors in determining the persuasiveness of a medical opinion or prior administrative medical finding. See 82 Fed. Reg. at 5853, 5857-58; 20 C.F.R. § 404.1520c(b)(2)-(3), (c)(1)-(2); Rushford v. Kijakazi, No. 23-317, 2023 WL 8946622, at *2 (2d Cir. Dec. 28, 2023)(explaining that the ALJ complied with the new regulations in crediting the State agency consultants'

---

[4] The plaintiff does not comment on the ALJ's evaluation of Dr. Rittner's opinion, which was more favorable to the plaintiff, except to note that she "used a physician code . . . indicating that she is a pediatrician."  See Pl.'s Mem. (ECF No. 14-1) at 38.

assessments over the opinions of a treating nurse
practitioner and a consultative examiner where he
"explain[ed] why – or why not – he found each opinion to be
'supported' by the record and 'consistent' with the other
evidence"). Indeed, even under the former regulations,
which gave the ALJ less deference when evaluating medical
opinions, the opinions of non-examining State agency
consultants could provide substantial support for the RFC
finding. Camille v. Colvin, 652 F. App'x 25, 28 (2d Cir.
2016) (explaining that the opinions of nonexamining sources
could override the opinions of the claimant's own sources
provided they were supported by the evidence in the
record).

Def.'s Mem. (ECF No. 15-1) at 9-10.  The court agrees.

The Decision states:

State agency consultants Deborah Stack, Ph.D., and Robert
Sutton, Ph.D., indicated that the claimant did not meet the
criteria for a diagnosis of post-traumatic stress disorder
(Exs. B3A/6; B5A/7). The opinions of Dr. Stack and Dr.
Sutton are persuasive. The undersigned notes that Dr. Stack
and Dr. Sutton relied on their program knowledge, a review
of the claimant's medical records and their specialization
in mental impairments in support of their assessments.
Their findings are also consistent with the other evidence
of record, which document the claimant's treatment for
anxiety disorder and depressive disorder, but no diagnosis
or treatment for post-traumatic stress disorder (Exs. B5F;
Bl3F).

. . . .

In August and October 2017, Dr. Stack and Dr. Sutton,
respectively, indicated that the claimant had mild
limitations in understanding, remembering or applying
information, mild limitations in interacting with others,
moderate limitations in concentrating, persisting or
maintaining pace and no limitations in adapting or managing
herself (Exs. B3A/6; B5A/6-7).

The overall opinions of Dr. Stack and Dr. Sutton are
persuasive. Their opinions were supported by detailed
explanations of the relevant clinical evidence. The state
agency consultants cited to the claimant's intact
cognition, limited activities of daily living due to pain,

pleasant/cooperative demeanor, distractibility and lack of
psychiatric hospitalizations in support of their findings.
Their opinions are also consistent with the other evidence
of record, which document the claimant's distractibility,
social isolative tendencies and problems performing her
daily activities due to pain, fatigue, anxiety and
depression (Exs. B5F). While the claimant submitted
additional evidence at the hearing level, this evidence did
not contradict the findings of the state agency
consultants. This additional evidence included references
to the claimant's improved pain and fatigue on her
prescription medication regimen, her conservative course of
mental health treatment and the relatively benign
examination findings of record (Exs. B1F; B3F; B5F;
B13F/16).

. . . .

The opinions of Dr. Stack and Dr. Sutton that the evidence
does not establish the presence of the "C criteria" are
persuasive (Exs. B3A/6; B5A/7). In this case, the evidence
failed to establish the presence of the "paragraph C"
criteria. The claimant had a medically documented history
of the existence of depressive disorder and anxiety
disorder, her depressive disorder or anxiety disorder did
not cause her to have minimal capacity to adapt to changes
in her environment or to demands that were not already part
of her daily life given she was able to leave her home to
attend medical visits. She also had no inpatient
psychiatric hospitalizations.

. . . .

Dr. Billinghurst's opinion is persuasive based on the
consistency of his opinion and that the state agency
consultant supported his opinion with detailed explanations
of the relevant clinical evidence. Dr. Billinghurst cited
to the claimant's history of chronic pain, MS, obesity, FM,
CTS and normal examinations in support of his findings. Dr.
Billinghurst's opinion is also consistent with the other
evidence of record, including evidence submitted at the
hearing level. The undersigned took into consideration the
claimant's joint pain, fatigue, 4/5 upper extremity
strength and giveaway lower extremity weakness at some
examinations (Exs. B1F/4-6, 17-21, 24-27, 29-32; B3F/22,
55; B13F/16-17, 20, 22-23). Yet, her improved fatigue and
pain with medication management, stable MS symptoms,

negative wrist x-rays, mild spinal MRI findings, normal
coordination, normal strength at numerous examinations,
intact sensations, normal gait and normal ranges of motion
support that she possessed the physical ability and stamina
to lift and/or carry twenty pounds occasionally and ten
pounds frequently, sit for two hours in an eight-hour
workday and stand and/or walk for six hours in an eight-
hour workday (Exs. B1F/4-6, 17-21, 24-27, 29-32; B2F/3;
B3F/1-2, 9-10, 19, 23-25, 33, 42, 56; B13F/16-17, 20, 22-
23, 33, 42; B14F/2).

In August and October 2017, Dr. Stack and Dr. Sutton
reported that the claimant's depression and anxiety would
at times mildly to moderately impact optimal performance
and productivity. She could be distractible. She had no
other cognitive deficits. The claimant had adequate
concentration, persistence or pace for simple, routine and
repetitive tasks. The claimant was more socially withdrawn
and not best suited to work with the general public.
However, the claimant could interact appropriately with
supervisors/coworkers for purposes of task completion. The
claimant was able to arrange for transit to work and to
avoid safety hazards in the workplace. She would not
respond well to abrupt, frequent changes in work routine,
but could adapt to minor changes (Exs. B3A, B5A/8-10).

The opinions of the state agency consultants are persuasive
as their opinions are supported by detailed explanations of
the relevant clinical evidence that was available to them
when they provided their assessments. The state agency
consultants relied on the claimant's lack of psychiatric
hospitalizations or higher levels of care, her
uncomfortableness in social situations, pleasant and
cooperative demeanor, intact cognition, and some
distractibility in support of their findings. The opinions
of Dr. Stack and Dr. Sutton are also persuasive based on
the consistency of their opinions. While additional
evidence was provided at the hearing level, this other
evidence did not contradict the findings of the state
agency consultants.

The record documents that the claimant attended weekly
therapy sessions since June 2015 to address her
psychosocial stressors, financial distress, child's Autism,
physical issues, and familial relational issues (Ex. B5F).
She did not require inpatient hospitalizations or higher
levels of care such as Intensive Outpatient Programs, or

Partial Hospitalization Programs (Ex. B5F). While the claimant reported disabling brain fog and concentration issues, the record documents her normal memory skills, full orientation, and normal focus and attention (Exs. BlF/17-21, 24-27, 29-32; B2F/3, 6; B3F/2, 10, 30, 56; B13F/16-17, 22-23).

The claimant's reported brain fog, and difficulties concentrating due to pain, fatigue, depression and anxiety, but her improved MS symptoms with treatment, normal memory skills, full orientation, normal fund of knowledge, normal focus and attention and ability to recite serial sevens support that she possessed the mental capacity to perform simple, routine tasks involving no more than simple, short instructions and simple work-related decisions despite her MS, depressive disorder and anxiety disorder (Exs. BlE/5; B2F/3, 6; B3F/2, 10, 56; B13F/16-17, 20, 22-23, 30; Hearing Testimony). The undersigned took into consideration the claimant's difficulties interacting with others and social isolative tendencies due to MS related pain (Exs. BlE; B5F). The claimant's uncomfortableness in social settings and few social supports due to pain required that she work in a non-public setting (Exs. BlE; B5F). However, her appropriate demeanor at medical visits, improved MS pain with treatment and ability to maintain familial relationships support that she could have tolerated occasional interactions with coworkers and supervisors [but was] unable to handle continuous exposure to others during the course of a normal workday due to MS, depressive disorder and anxiety disorder (Exs. B1E; BlF/17-21, 24-27, 29-32; B5F; B13F/16-17, 20, 22-23; Hearing Testimony).

R. 751-753, 757-58 (emphasis added).

Here, the ALJ articulated the reasons for finding the state agency reviewers' opinions persuasive, namely, they relied on their program knowledge, their specialization in mental impairments, and a review of the medical records; they supported their findings with detailed explanations of relevant clinical evidence; they cited intact cognition, pleasant/cooperative demeanor, lack of psychiatric hospitalizations and diagnosis or

treatment for post-traumatic stress disorder, and ability to leave her home and attend medical visits; and the record documents normal memory skills, focus, and attention, full orientation, improved fatigue and pain with medication management, stable MS symptoms, negative wrist x-rays, mild spinal MRI findings, intact sensations and normal coordination, strength, gait and ranges of motion at numerous examinations. Also, the state agency consultants' opinions are consistent with each other, other evidence of record, and the evidence submitted after their reviews which included references to improved pain and fatigue with medication, conservative mental health treatment, and relatively benign examination findings.

### B.   The Decision is Supported by Substantial Evidence

As to the plaintiff's first, third and fourth points, she contends:

> . . . the Administrative Law Judge . . . made misstatements and exaggerations of the record. . . . misrepresented Ms. W[.] as an active person, with few day-to-day restrictions. As a result, the ALJ did not credit Ms. W[]'s descriptions of her symptoms.

Pl.'s Mem. (ECF No. 14-1) at 30.  She also contends that the ALJ's reasoning was "not supported by substantial evidence" (id.) and that the ALJ's "findings are incorrect" (id.). "The ALJ minimized Ms. W[.]'s objective exam findings, particularly regarding her hand use".  Id. at 32.  "[T]he ALJ relied

exclusively on misstatements and minimizations of the record."

Id. at 34.  The plaintiff contends further:

> The ALJ should have made findings as to Ms. W[]'s hand use
> limitations, limiting her to at most frequent handling,
> fingering, and feeling. This omission from the RFC
> description is detrimental because "[m]ost unskilled
> sedentary jobs require good use of both hands and the
> fingers; i.e., bilateral manual dexterity.

Id. at 43.  As to cognitive limitations, fatigue, and periods of

rest, the plaintiff contends:

> Ms. W[.] has numerous and overlapping exertional
> difficulties [(severe back pain, incontinence, excessive
> daytime sleepiness, arm and leg weakness, MS, pain,
> cognitive decline)], which prevent not just the performance
> of light exertion work, but also of any work on a
> consistent and sustained basis. Her single greatest barrier
> to employability is her extreme fatigue, requiring
> extensive periods of rest. The ALJ should have accounted
> for this in her RFC description.

Id. at 43.

The defendant maintains that the ALJ supported the RFC with

substantial evidence and that the plaintiff has failed to meet

her burden of showing——based on all of the evidence——that "no

reasonable factfinder could have reached the same conclusion."

Spottswood v Kijakazi, 23-54-cv, 2024 WL 89635, at *3 (2d Cir.

Jan. 9, 2024) (citation and internal quotation marks omitted).

The defendant cites to evidence in the record which shows that

the mental RFC is supported by treatment notes, activities of

daily living, and the assessments of two state agency

psychologists (See Def.'s Mem. (ECF No. 15-1) at 6-13.) and that

the physical RFC is supported by the assessments of several state agency physicians, treatment notes, and activities of daily living (See Def.'s Mem. (ECF No. 15-1) at 13-19.).  The court agrees.

The Decision states:

> [T]he undersigned finds that the claimant's medically determinable impairments could have reasonably been expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

> . . . .

> The claimant's allegations are not fully corroborated by the overall evidence of[]record. The claimant reported disabling MS pain, fatigue and brain fog. Yet, the record documents that the claimant's MS was stable (Ex. B13F/20, 22-23). She had better pain control and improved energy levels on her prescription medication regimen (Exs. B3F/22; B13F/16-17, 22-23). While she reported diffuse pain at examinations, she presented in no acute distress at those same examinations (Exs. B1F/17-21, 24-27, 29-32; B3F/2, 10). She also reported no difficulties concentrating, remembering, making decisions, dressing, bathing, doing errands on her own, walking, or climbing stairs at examinations (Ex. B2F/3, 6). The claimant had relatively benign examination findings, negative wrist x-rays and mild spinal MRI findings (Exs. B3F; B4F; B13F; B14F/2). . . .[5]

> The claimant's improved fatigue and pain symptoms with medication management, the relatively benign examination findings of record and her ability to perform her activities of daily living and care for her minor child prior to the date last insured is inconsistent with a level of severity that would have precluded her from sustaining any work activity (Exs. B1E; B1F/10; B2F/3, 6; B3F/22; B13F/16-17, 20, 22-23; Hearing Testimony). Based on the overall evidence of record, the undersigned finds that the

---

[5] See fn. 3.

> record did not show evidence to support greater
> restrictions than provided for in the decisional residual
> functional capacity.

R. 754, 756-757.

Thus the ALJ identified substantial evidence that supports
the finding that the plaintiff was not disabled during the
relevant time period, namely, evidence showing that her MS was
stable, fatigue and pain improved with medication; that she had
relatively benign examination findings, negative wrist x-rays,
mild spinal MRI findings; and that she had the ability to
perform activities of daily living and care for her minor child.

Although the plaintiff argues that the ALJ's findings are
inaccurate, she demonstrates only that there is evidence in the
record to support her position, rather than demonstrating that
based on all of the evidence, no reasonable factfinder could
have reached the conclusion reached by the ALJ, or that there is
an error of law.  Where substantial evidence supports the ALJ's
findings, unless there is a harmful error of law, they must be
affirmed, even when substantial evidence may also support the
plaintiff's position.

## III.  CONCLUSION

For the reasons set forth above, Plaintiff's Motion for
Order Reversing the Decision of the Commissioner (ECF No. 14) is

hereby DENIED, and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 15) is hereby GRANTED.

The Clerk shall enter judgment accordingly and close this case.

It is so ordered.

Dated this 28th day of February 2025, at Hartford, Connecticut.

                                    /s/AWT
                              Alvin W. Thompson
                         United States District Judge